UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,

  -v-                                               No. 20 CV 1186-LTS

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
-------------------------------------------------------x
In re:
BERNARD L. MADOFF

                Debtor.
-------------------------------------------------------x
IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

                Plaintiff,

  -v-

THE ESTATE OF ROBERT SHERVYN
SAVIN and BARBARA L. SAVIN, in her
capacity as Personal Representative of the
Estate of Robert Shervyn Savin,

                Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Defendants The Estate of Robert Shervyn Savin ("Savin") and Barbara L. Savin, in her capacity as Personal Representative of the Estate of Robert Shervyn Savin (collectively, "Defendants"), move to withdraw the reference of the above-captioned adversary proceeding from the United States Bankruptcy Court for the Southern District of New York and to dismiss

the adversary proceeding for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and S.D.N.Y. Local Bankruptcy Rule 5011-1. (See docket entry no. 1, the "Motion".) Plaintiff Irving H. Picard, trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("Trustee" or "Plaintiff"), who commenced the adversary proceeding to recover certain payments received by Defendants, filed his opposition to Defendants' motion on March 11, 2020. (See docket entry no. 6, the "Opp.".) On March 31, 2020, Defendants filed a reply. (See docket entry no. 10, the "Reply".) On May 8, 2020, the Trustee filed a sur-reply.[1] (See docket entry no. 12.) The Defendants filed a letter in response to the Plaintiff's sur-reply on May 21, 2020. (See docket entry no. 14.) On June 5, 2020, the Trustee filed a letter in further support of his position opposing the Defendants' motion. (See docket entry no. 15.)

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b). The Court has considered carefully the parties' submissions and, for the reasons stated below, the Defendants' motion is denied.

### BACKGROUND

The following facts are drawn from the parties' submissions in connection with the Defendants' motion, including their memoranda of law and exhibits.

Bernard L. Madoff's Businesses

In 1960, Bernard L. Madoff ("Madoff") registered with the Securities and Exchange Commission ("SEC") as a broker-dealer. (Opp. at 2.) From 1960 until January 1,

---

[1] Plaintiff filed a sur-reply in response to the Court's April 28, 2020, Order directing Plaintiff to address Defendants' contention in their reply brief that the "bankruptcy court lacks equitable power to adjudicate the underlying adversary proceeding because the Defendants' proof of claim was resolved prior to the initiation of the adversary proceeding." (See docket entry no. 11.)

2001, Madoff operated a broker-dealer business as a sole proprietorship called Bernard L. Madoff Investment Securities ("BLMIS"), which consisted of three business units: (i) a proprietary trading ("PT") business; (ii) a market-making ("MM") business; and (iii) the Investment Advisory ("IA") business.  (Id.; Motion at 4.)

On January 1, 2001, Madoff formed Bernard L. Madoff Investment Securities LLC (the "LLC").  (Opp. at 2; Motion at 4.)  After creating the LLC, Madoff sent letters to various entities, including the Bank of New York, the SEC, and the Depository Trust Company (DTC), informing them that the LLC would do the PT and MM business.  (Id.)  On January 12, 2001, Madoff submitted a Form BD to the SEC, in which he described the businesses that the LLC engaged in as proprietary trading and market making.  (Id. at 4-5.)

Madoff used two bank accounts to transfer funds received from and sent to IA business customers: 1) JP Morgan Chase Bank, N.A. ("Chase") account #xxxxx1703 (the "703 Account"); and 2) Chase Account #xxxxxxxxx1509 (individually, the "509 Account," and together with the 703 Account, the "Chase Accounts").  (Id. at 5-6; Opp. at 3.)

Madoff's Arrest and Subsequent Litigation

On December 11, 2008, Madoff was arrested on charges of violating federal securities laws, and the SEC filed a civil complaint against Madoff and the LLC in the U.S. District Court for the Southern District of New York.  (Motion at 2.)  On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in the district court asserting that the LLC was not able to meet its obligations to securities customers as they became due and that the LLC's customers were entitled to the protections afforded by the Securities Investor Protection Act ("SIPA").  (Id.)  That same day, the SEC consented to combining its civil action with SIPC's application, and the district court entered an order which, in relevant part,

granted SIPC's application and appointed Picard as the trustee for the liquidation of the LLC pursuant to 15 U.S.C. section 78eee(b)(3) of SIPA, and removed the entire case to the bankruptcy court pursuant to 15 U.S.C. section 78eee(b)(4) of SIPA.  (Id. at 3; SEC v. Bernard L. Madoff, No. 8 cv 10791 (S.D.N.Y. Dec. 15, 2008) (docket entry no. 4)).

On December 23, 2008, the bankruptcy court entered a Claims Procedures Order, which directed customers and other creditors to file claims with the Trustee by July 2, 2009 (the "Claims Procedures Order").  (Opp. at 5.)  On April 13, 2009, several creditors filed an involuntary bankruptcy petition against Madoff in his individual capacity.  (Motion at 3.)  As a result, Alan Nisselson (the "Madoff Trustee") was appointed as Chapter 7 trustee for Madoff's individual bankruptcy estate, which was consolidated into the liquidation proceeding for the LLC on June 9, 2009.  (Id.)

The Savin Customer Account, Claim and Action

On January 17, 2000, Savin opened his account with the IA business. (Id. at 7.) Savin sent checks to Madoff, which were made payable to "Bernard L. Madoff" in his individual capacity.  (Id. at 7-8.)  All of Savin's alleged withdrawals were paid to Savin with checks from the 509 Account.  (Id. at 8.)

On June 5, 2009, pursuant to the Claims Procedure Order, Savin filed a customer claim seeking to recover the purported balance in his BLMIS account as stated on his last BLMIS account statement, which the Trustee designated as Claim #009439 (the "Customer Claim").  (Opp. at 6.)  On March 15, 2010, the Trustee issued a Notice of Trustee's Determination of Claim to Savin (the "Determination"), in which the Trustee denied Savin's Customer Claim because (1) BLMIS never actually purchased any securities on behalf of Savin's account; (2) Savin withdrew more funds than he had deposited with BLMIS; and (3) the funds

received in excess of the deposits in Savin's accounts were taken from other BLMIS customers and given to Savin.  (Id.)  Accordingly, the Trustee denied the Customer Claim based on the negative "net equity" in Savin's BLMIS account.[2]  (Id.)  Defendants did not file an objection to the Determination.  (Id. at 7.)

On December 2, 2010, the Trustee filed a complaint against Savin asserting claims pursuant to section 548(a) of the Bankruptcy Code, 11 U.S.C. § 548(a), and seeking to avoid and recover a total of $450,000 in fraudulent transfers allegedly made by BLMIS to or for the benefit of Savin after December 11, 2006 (the "Savin Action").  (Id. at 7, n.13.)  On August 13, 2015, Savin answered the Trustee's complaint, asserting that "[t]he Trustee lacks standing because BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff."  (Id.)  The Savin Action is ready for trial in bankruptcy court.  (Id.)

## DISCUSSION

Defendants seek mandatory withdrawal of the bankruptcy reference in the Savin Action and move to dismiss the case for lack of subject matter jurisdiction on the basis that the Trustee lacks Article III standing to pursue his claims against Savin.  District courts have original but not exclusive jurisdiction of all bankruptcy civil proceedings arising under Title 11 of the United States Code or arising in or relating to cases under Title 11.  28 U.S.C. § 1334(b).  In the Southern District of New York, all Title 11 proceedings, including SIPA liquidations, are automatically referred to the bankruptcy court.  See 28 U.S.C. § 157(a); Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan 31, 2012) (Preska, C.J.).  The district court's

---

[2] To compute Savin's net equity, the Trustee subtracted withdrawals from deposits over the life of Savin's BLMIS account.  The Trustee's methodology for calculating net equity was upheld by the Second Circuit.  See In re BLMIS, 654 F.3d 229 (2d Cir. 2011).

authority to withdraw the reference is governed by 28 U.S.C. § 157(d), which sets forth the standards for mandatory and permissive withdrawal.  The district court may withdraw a bankruptcy reference, "on its own motion or on timely motion of any party, for cause shown."  28 U.S.C.A. § 157(d) (Westlaw through P.L. 116-158).  In deciding whether there is cause to withdraw a reference, district courts consider "whether the claim or proceeding is core or non-core, whether it is legal or equitable," and whether withdrawal would serve the interests of "efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).  "The moving party bears the burden of demonstrating that permissive withdrawal of the reference is warranted."  In re Lehman Bros. Holdings Inc., 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014).

On the other hand, a district court must withdraw the reference where, upon timely motion of a party, "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C.A. § 157(d) (Westlaw through P.L. 116-158).  Mandatory withdrawal is "reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990) (internal quotations omitted).  In such cases, a judge would have to "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  N.Y.C. v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991) (stating that mandatory withdrawal of bankruptcy reference would be necessary if the bankruptcy would have to interpret the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) to determine the amount of damages and availability of affirmative defenses).  "The

purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of federal laws outside of the Bankruptcy Code." In re Ames Dep't Stores Inc., 512 B.R. 736, 740 (S.D.N.Y. 2014) (internal quotations omitted).  Additionally, a timely motion is one that is filed "as soon as possible after the moving party has notice of the grounds for withdrawing the reference." In re FMI Forwarding Co., Inc., No. 00 B. 41815 (CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) (internal quotations omitted).

To establish Article III standing, a plaintiff must demonstrate the existence of a "case or controversy" between himself and the defendant within the meaning of Article III of the Constitution.  Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006). "To meet the Article III standing requirement, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (internal quotation marks omitted)." Id.  Additionally, as a prudential matter, the plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975).  Where a plaintiff lacks an Article III injury, a federal court cannot exercise jurisdiction over the case.  Id. at 518.

Mandatory Withdrawal

Defendants argue that the Trustee lacks standing to bring claims to recover withdrawals Savin took from his BLMIS account because the LLC did not pay the sums at issue to Savin.  They submit that, because the documentary evidence proves that Madoff did not transfer the IA business from his sole proprietorship to the LLC, and the 703 and 509 Accounts were never transferred over to the LLC, the Trustee does not have the right to bring an avoidance

action on behalf of the LLC to recover Savin's excess withdrawals; that right, according to Defendants, belongs only to the Madoff Trustee.  Defendants point to the Form BD that Madoff submitted to the SEC when he formed the LLC, and argue that it demonstrates Madoff's intention not to transfer the IA business to the LLC.

Defendants further contend that withdrawal of the reference is mandatory here because the Court's determination of the threshold issues of Article III standing and subject matter jurisdiction requires significant interpretation of non-bankruptcy laws, including the United States Constitution, state banking laws, and federal securities laws and regulations. However, Defendants fail to specify any non-bankruptcy laws that require substantial interpretation, much less explain the significance of any such laws in the context of the avoidance action.  Indeed, Defendants assert that conflicts between the Bankruptcy Code and other federal laws mandate withdrawal, but they do not identify any such conflict.  Defendants also suggest that resolution of this avoidance action requires interpretation of SIPA, but, other than asserting that Trustee did not suffer an Article III injury under SIPA because the LLC is not the debtor here, Defendants do not cite any SIPA provision requiring substantial and material attention from the Court.  Defendants also contend that "the legal significance of the filing by Madoff of SEC Form BD is an issue of federal securities law which is beyond the jurisdiction of the Bankruptcy Court[,]" and that consideration of the issue requires "significant interpretation of federal securities laws," mandating withdrawal.  (Reply at 6.)  However, Defendants do not provide any explanation or proffer any support for these conclusory arguments, nor do they specify which federal securities laws they claim require sufficient consideration to mandate withdrawal.

With regard to their contention that the Court's interpretation of the Constitution to resolve the standing issue necessitates withdrawal of the bankruptcy reference, Defendants argue that, because the "plain terms of [section 157(d)] protect a party's constitutional interest in having an Article III court interpret federal statutes that affect interstate commerce, then [section 157(d)] must also protect a party's interest in having an Article III court interpret the Constitution itself," particularly where the Court must determine whether it has subject matter jurisdiction.  (Motion at 10-11.)  However, Defendants cite inapposite cases, which involved the consideration of non-bankruptcy law to an extent that is unnecessary here.  See, e.g., In re Ames Dept. Stores Inc., 512 B.R. 736, 742-43 (S.D.N.Y. 2014) (withdrawing bankruptcy reference where "substantial and material consideration" of the McCarran-Ferguson Act was necessary to determine whether the bankruptcy court's exercise of jurisdiction over the adversary proceeding would "'invalidate, impair, or supersede' Illinois state law within the meaning of the [Act,]" and the relationship between the Act and the first-exercising jurisdiction doctrine); NLRB v. Goodman, 873 F.2d 598, 602-04 (2d Cir. 1989) (withdrawing bankruptcy reference sua sponte to resolve a "question of substantive federal labor law" as to "[w]hether a new employer is an alter ego of, or a successor to, an earlier employer for purposes of liability under the NLRA[.]") Indeed, "[n]ot every invocation of constitutional law requires withdrawal of the reference." In re Motors Liquidation Co., 538 B.R. 656, 662 (S.D.N.Y. 2015.).  "A bankruptcy court is just as bound by the Constitution as any Article III court," LTV Steel Co., Inc. v. Union Carbide Corp., 193 B.R. 669, 674, and section 157(d) does not deny the bankruptcy court authority to make threshold determinations as to whether or not the party before it has standing to pursue its claims, particularly where there is no need for significant interpretation of non-bankruptcy laws.

Additionally, Defendants fail entirely to specify any federal laws regulating organizations or activities affecting interstate commerce that require "substantial and material consideration" by the Court within the meaning of section 157(d).  Indeed, "Congress could have provided for mandatory withdrawal where resolution of claims requires consideration of constitutional issues, [but] it did not do so.  Instead, Congress mandated withdrawal of claims where the 'resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.'"  In re Extended Stay, 466 B.R. 188, 201 (S.D.N.Y. 2011) (footnotes omitted; emphasis in original) (holding that withdrawal of bankruptcy reference was not mandatory under section 157(d) where defendants failed to demonstrate a necessary application of a federal statutory law "implicat[ing] the regulation of organizations or activities affecting interstate commerce.").  Accordingly, because Defendants have not offered any explanation as to why the determination they seek will require significant interpretation of non-bankruptcy federal laws rather than a routine application of the Constitution and federal statutes to a particular set of facts "such that they may overcome the 'narrow' scope this Circuit gives to mandatory withdrawal under section 157(d)[,]" they have not met their burden of showing that withdrawal of the reference is mandatory.  Id. at 203.

Furthermore, as the Trustee has pointed out in his opposition to the motion, the issue of whether ownership of the 703 and 509 Accounts was transferred to the LLC is a factual question that underlies both the question of standing and the merits of the Trustee's claim under the Bankruptcy Code, which requires him to demonstrate that the LLC transferred the customer property at issue.  See 11 U.S.C. § 548(a)(1)(A); SIPA § 78fff-2(c)(3).  Indeed, in Picard v. Nelson, Bankruptcy Judge Bernstein rejected the same standing arguments made by the Defendants here because the arguments conflated issues of jurisdiction and the merits of a

similar fraudulent transfer claim brought by the Trustee.  610 B.R. 197, 216 (Bankr. S.D.N.Y. 2019).  In Nelson, Judge Bernstein found that the Trustee had Article III standing to argue that the LLC made the transfers at issue in his position as a "representative of an insolvent customer property estate," who was tasked with the responsibility of bringing avoidance actions for the benefit of the estate.  Id. at 215.  Judge Bernstein observed that, if the trustee cannot prove that entity whose insolvent customer property estate he represents made the transfers at issue, "he will lose on the merits."  Id. at 216 (finding that the LLC owned the same 509 and 703 bank accounts at issue here, and that the bank accounts were the source of alleged intentional fraudulent transfers that the trustee sought to recover).

The Trustee is correct in arguing that the standing question of whether the LLC has any ownership interest in Savin's withdrawals is one that is intertwined with the merits of his claim, and must be determined at trial.  Any overlapping question of jurisdiction may be addressed at the close of evidence.  See Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006) ("[W]here the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of evidence . . . If, however, the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial[.]") (citations omitted).

Accordingly, withdrawal of the bankruptcy reference is not required by section 157(d).

Permissive Withdrawal

In their Reply, Defendants also suggest that permissive withdrawal is warranted because the bankruptcy court lacks equitable jurisdiction of the Savin Action and the Defendants have an indisputable right to a jury trial in this Court.  (Reply at 3.)  Defendants submit that, because they did not file an objection to the Trustee's determination of Savin's proof of claim, which was deemed disallowed, the Defendants "cannot be deemed to have given their consent to the Bankruptcy Court's jurisdiction."  (Reply at 3.)

The Supreme Court has held that, in the context of a bankruptcy trustee's fraudulent transfer claim, a defendant's right to a jury trial depends on whether the defendant has filed a claim against the estate.  See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58 (1989).  Once a creditor files a proof of claim, he "triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."  Langenkamp v. Culp, 498 U.S. 42, 44 (1990).  The bankruptcy court retains equitable jurisdiction over the creditor in "proceedings affecting that claim."  In re CBI Holding Co., Inc., 529 F.3d 432, 466 (2d Cir. 2008); see also Germain v. Connecticut Nat. Bank, 988 F.2d 1323, 1329 (2d Cir. 1993) ("the Katchen, Granfinanciera, and Langenkamp line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim[.]") (emphasis in original).  Therefore, where a creditor who files a customer claim "is met with an adversary proceeding, the resolution of which affects the equitable restructuring of debtor-creditor or creditor-creditor relations, then the creditor loses its right to a jury trial even with regard to traditional legal claims."  In re CBI Holding Co., Inc., 529 F.3d at 466 (citing Langenkamp, 498 U.S. at 44.)  A fraudulent conveyance action brought under section 548 of the Bankruptcy Code sufficiently

implicates the claims allowance process and is deemed to be equitable in nature.  See Picard v. Greiff, No. 20 CV 2560 (S.D.N.Y. June 4, 2020) (docket entry no. 9 at 11) (finding that a similar fraudulent conveyance action brought by the Trustee to replenish the BLMIS customer property estate both implicated the claims-allowance process, and was "part and parcel" of the defendant's customer claim against the BLMIS estate such that the bankruptcy court had authority to enter final judgment in the Trustee's avoidance action).

Here, when Savin filed his Customer Claim, he (and, hence, Defendants) consented to the bankruptcy court's exercise of equitable jurisdiction of sufficiently related matters.  See Picard v. BAM L.P. et al., 612 B.R. 257, 265 n.6 (S.D.N.Y. 2020) (finding that the filing of a statement of claim under SIPA is the functional equivalent of filing a claim in a bankruptcy case) (citations omitted).  The Trustee's claims against Savin to recover excess funds constitutes a fraudulent conveyance action that implicates the claims-allowance process that Savin initiated in bankruptcy court.  Accordingly, the bankruptcy court has equitable jurisdiction over Defendants in the Savin Action.  The absence of an objection filed by Savin to the Trustee's determination of the Customer Claim is irrelevant to the determination of whether the Defendants consented to the bankruptcy court's jurisdiction in the underlying proceeding, because the disallowance of a proof of claim "does not affect the bankruptcy court's authority to decide a trustee's claim, as it is the filing of the proof of claim that invokes the waiver" to a jury trial in this Court.  Greiff at 9 (collecting cases).  Therefore, permissive withdrawal on the basis of lack of equitable jurisdiction over the Savin Action is not warranted.[3]

---

[3]  To the extent that Defendants contend that the bankruptcy court lacks equitable jurisdiction over the Savin Action because the Customer Claim was disallowed prior to the Trustee's filing of his complaint 2010, the Court finds the argument to be without merit. Even if the pending nature of the Customer Claim were relevant to the Defendants' consent to the court's jurisdiction, the Court notes that the Customer Claim remained

Furthermore, having considered the interests of promoting judicial economy, efficiency, and uniformity in the administration of bankruptcy law, and preventing forum shopping, the Court finds that permissive withdrawal of the reference is not warranted here.  See In re Orion Pictures Corp., 4 F.3d at 1101; BAM L.P., 612 B.R. at 265 (denying permissive withdrawal of bankruptcy reference in similar action, in part because withdrawal would "severely delay resolution of the avoidance action, would strip determination of core issues from a forum that has developed significant expertise over this SIPA liquidation, and would risk producing inconsistent outcomes given Bankruptcy Judge Bernstein's involvement in numerous other adversary proceedings to avoid and recover transfers BLMIS made to certain customers.") (internal quotations omitted).

For these reasons, the Court declines to withdraw the bankruptcy reference in the Savin Action, and need not address the parties' arguments regarding the timeliness of Defendants' motion or the question of whether the Trustee has standing to pursue his claims against Savin.

CONCLUSION

For the foregoing reasons, Defendants' motion to withdraw the bankruptcy reference in the underlying adversary proceeding is denied, and Defendants' motion to dismiss the Trustee's complaint for lack of subject matter jurisdiction is denied as moot.

---

pending while the Trustee's use of the net equity calculation method in reaching his determinations was on appeal, and was not finally resolved until the Supreme Court denied a petition for a writ of certiorari in 2012.  See Velvel v. Picard, 567 U.S. 934, (2012).

This Memorandum Opinion and Order resolves docket entry no. 1. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: New York, New York
September 8, 2020

        /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge